

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

SEP - 6 2007

CLERK, U.S. DISTRICT COURT
By _____
                    Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

MANSFIELD HELIFLIGHT, INC., §
§
         Plaintiff, §
§
VS. § NO. 4:06-CV-425-A
§
BELL/AGUSTA AEROSPACE §
COMPANY, LLC, ET AL., §
§
         Defendants. §

MEMORANDUM OPINION
and
ORDER

On July 3, 2007, defendants, Bell/Augusta Aerospace Company,

L.L.C. ("Bell") and Agusta Aerospace Corporation ("AAC"),

(collectively, "defendants") moved for summary judgment on all

claims asserted by plaintiff, Mansfield Heliflight, Inc.

("Mansfield"). Having considered the motion, the response, the

reply, the summary judgment evidence, and the applicable legal

authorities, the court concludes that the motion should be

granted in part and denied in part.

I.

Mansfield's Claims

This dispute arises out of a contract for the sale of two

helicopters. In October 2005, Mansfield entered into an

agreement with Bell for the purchase of two used helicopters for

a price of $1.8 million.  In December 2005 Mansfield inspected

the helicopters, as contemplated by the agreement, and accepted

them with the understanding that the helicopters would be

delivered in December 2005 and the further understanding that

there would be no changes to the helicopters since the last

maintenance report before the acceptance.  Bell thereafter

assigned the agreement to AAC.  Mansfield claims that defendants

failed to timely deliver the helicopters in the agreed upon

condition.  It asserts claims for breach of contract, fraudulent

inducement to enter into the contract, and conversion.[1]

## II.

## Defendants' Motion for Summary Judgment

Defendants have moved for summary judgment on all of

Mansfield's claims.  Because defendants assert numerous grounds

for summary judgment and because many of the grounds urged are

very intertwined with the underlying facts surrounding this

dispute, defendants' specific grounds are addressed in the

court's legal analysis below.  See Section V, infra.

---

[1]Mansfield also asserted a claim under the Texas Deceptive Trade
Practices Act, but, in response to defendants' motion for summary judgment,
withdrew that claim.  See Mansfield's Br. in Opp'n to Defs.' Mot. for Summ. J.
("Mansfield's Br.") at 40-41.

III.

Undisputed Facts

Mansfield is a Vermont corporation primarily engaged in the purchase and sale of helicopters and helicopter parts. The company was founded by Eric Chase ("Chase") in 1986. Chase remains Mansfield's president and sole owner. Bell and AAC are both engaged in the sale and distribution of helicopters throughout the United States.

During 2005, Chevron Oil Company ("Chevron") had a pending order for two new helicopters, model AB 139s, from Bell. In connection with that purchase, Chevron was to trade in two existing helicopters from its inventory, two Sikorsky S76A model helicopters ("the Sikorskys"). Chevron temporarily needed to use the Sikorskys; and, Bell and Chevron agreed that Chevron would continue to have use of the Sikorskys until Chevron's new helicopters were operational.

In the fall of 2005, Chase, acting for Mansfield, contacted Don Groenemann ("Groenemann"), Bell's[2] manager of pre-owned aircraft sales, to inquire regarding helicopters available for

_____

[2]Although Bell contends that Groenemann worked for Bell Helicopter, which Bell claims to be a separate company, Bell does not argue that Groenemann was unauthorized to act on its behalf or otherwise was not its agent for purposes of this litigation.

purchase. Groenemann told Chase about the Sikorskys, and invited him to make an offer. Chase initially offered $1.6 million, but Groenemann told Chase the offer needed to be closer to $1.8 million. Bell accepted Chase's subsequent offer $1.8 million. The acceptance letter expressed Mansfield's understanding that the helicopters would be released in December 2005. On October 18, 2005, Bell, acting through Groenemann, informed Mansfield, through Chase, that he believed Bell would be able to accept Mansfield's offer to purchase the Sikorskys in an "as is" condition and subject to a December 2005 delivery.

On October 24 and 27, 2005, Bell and Mansfield, respectively, signed a Purchase Agreement for the Sikorskys, and Mansfield placed a $180,000 deposit in escrow. The Purchase Agreement, which was drafted by Bell, provided that the Sikorskys were being sold "as is/where is." It provided that the Sikorskys would be accepted by Mansfield in the month of December 2005 unless the parties agreed otherwise; and, it went on to provide that Mansfield would inspect the Sikorskys before delivery and would execute a Certificate of Acceptance in a form provided by Bell. If Mansfield found that the Sikorskys were not in compliance with the agreement, it was to specify to Bell in writing any deficiencies; and, following cure of such

deficiencies, the parties would continue the acceptance procedures. The agreement contemplated that risk of loss of the Sikorskys would pass to Mansfield upon receipt by Bell of Mansfield's Certificate of Acceptance, and that, upon receipt of the full purchase price for the Sikorskys, Bell would transfer title to Mansfield. The balance of the purchase price was to be paid at the time of acceptance of the Sikorskys, prior to their shipment from Bell's facility. As discussed in more detail below, the document also contained broad waiver of liability provisions in Bell's favor and provisions setting forth the precise manner in which Mansfield was to inspect and accept the Sikorskys.

On November 28, 2005, Groenemann emailed a Mansfield employee to tell Chase that he needed his acceptance or rejection of the Sikorskys by the first week of December. After inspection, on December 12, 2005, Mansfield executed a "Certificate of Inspection and Acceptance" ("the Acceptance"). The Acceptance provided as follows:

> MANSFIELD HELIFLIGHT INC., ACTING THROUGH THE
> UNDERSIGNED REPRESENTATIVE, HAVING INSPECTED MODEL S-
> 76A, S/N's 760140 & 760137, AND FIND THAT IT CONFORMS
> TO THE CONTRACT OF SALE BETWEEN MANSFIELD HELIFLIGHT
> INC. AND BELL HELICOPTER TEXTRON.

> HAVING CONFIRMED THAT THE HELICOPTER CONFORMS TO THE
> CONDITIONS OF THE CONTRACT, THE HELICOPTER IS HEREBY
> ACCEPTED AND DEPOSIT IS NOW DEEMED NON-REFUNDABLE.
>
> THIS IS SUBJECT TO THE PARAMETERS OF OUR CONTRACT AND
> SUBJECT TO AVAILABILITY WITH NO CHANGES TO THE AIRCRAFT
> SINCE THE LAST MAINTENANCE REPORT.

Defs.' App. at 10.

Notably, the Acceptance was provided by Groenemann to an a Mansfield employee in response to her email request for some comfort that Mansfield will have recourse if the helicopters are damaged, since one was "still flying." Pl.'s App. at 21. In response, Groenemann wrote: "Just give me your email or acceptance certificate such as the one enclosed saying you have inspected the aircraft and accept it subject to the parameters of your offer and subject to the availability with no changes since the last maintenance report. Below is an acceptance format if you need it." Id.

Mansfield did not pay the balance of the purchase price after executing the Acceptance. The helicopters were not made available by Bell for delivery to Mansfield in December 2005. At Bell's behest, Mansfield assented to changing the delivery date to January 2006. When January arrived, the helicopters still were not available for delivery. On February 20, 2006, the contract between Mansfield and Bell was assigned to AAC. AAC

first made both Sikorskys available for delivery to Mansfield on April 17, 2006. ACC informed Mansfield that subsequent to its execution of the Acceptance, the Sikorskys had been used on an ongoing basis by Chevron. Nonetheless, AAC demanded that Mansfield purchase them in their current condition at the full contract price. Mansfield subsequently attempted to negotiate a reduction in the purchase price. These efforts failed, and AAC terminated the Purchase Agreement on June 5, 2006, and sold the Sikorskys to a third party.

During the period of time following Mansfield's execution of the Acceptance through the date the Sikorskys were offered for delivery, 465.4 additional hours flown on the helicopters. In addition to the total hours flown on the helicopters, major components were changed in at least one of the Sikorskys, including an engine, tail rotor blade assemblies, main rotor assemblies, and possibly other items.

## IV.

### Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby,</u>

Inc., 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. Anderson, 477 U.S. at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. Anderson, 477 U.S. at 248, 256. To meet this burden, the nonmovant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994). An issue is material only if its resolution could affect the outcome of the action. Anderson, 477 U.S. at 248. Unsupported allegations, conclusory in nature, are insufficient to defeat a

proper motion for summary judgment.  <u>Simmons v. Lyons</u>, 746 F.2d 265, 269 (5th Cir. 1984).

V.

<u>Analysis</u>

A.    <u>Breach of Contract</u>.

To prevail on its breach of contract claim, Mansfield must show that a contract existed between the parties, that defendants breached a duty under the contract, and that Mansfield sustained damages as a result.  <u>See</u>, <u>e.g.</u>, <u>Snyder v. Eanes Indep. Sch. Dist.</u>, 860 S.W.2d 692, 695 (Tex. App.--Austin 1993, writ denied).

Defendants allege several grounds for summary judgment with respect to Mansfield's claim for breach of contract.  First, they allege that broad waiver of liability provisions contained in the Purchase Agreement prevent Mansfield from asserting any claim whatsoever against them, including a claim for breach of contract.  Alternatively, they contend that Mansfield's breach of contract claim is entirely premised on the Acceptance, which, in turn, is not part of the Purchase Agreement and is, instead, inadmissible parol evidence.  Third, defendants urge that, by failing to pay the balance of the purchase price owing under the Purchase Agreement, Mansfield has failed to meet an essential condition precedent to its suing for breach of contract.

Finally, defendants allege that Mansfield has not suffered any damage as a result of any breach of contract.  For the reasons stated below, the court is not persuaded by any of these grounds and, consequently, denies their motion for summary judgment with respect to Mansfield's claim for breach of contract.

1.    The Waiver of Liability Provisions.

Defendants' first ground that Mansfield is precluded by the terms of the Purchase Agreement from asserting a breach of contract claim is predicated on the provisions in section 1 of Article 2 and Article 17 of the Purchase Agreement, which read as follows:

ARTICLE 2
CONFIGURATION

1.    **Selection:**  THE EQUIPMENT, AS LISTED IN APPENDIX 1 HERETO, IS SOLD "AS IS/WHERE IS."  SELLER MAKES NO WARRANTIES WHATSOEVER.  SELLER SPECIFICALLY EXCLUDES ALL IMPLIED WARRANTIES, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OR CONDITIONS OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.  IT IS FURTHER AGREED THAT SELLER EXCLUDES ANY AND ALL LIABILITIES, AND BUYER HEREBY WAIVES AND RELEASES ANY CLAIMS WHICH MAY HEREAFTER ARISE OR ACCRUE IN HIS FAVOR, BASED UPON ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY IN CONTRACT OR IN TORT (DELICT), INCLUDING PRODUCT LIABILITIES BASED UPON STRICT LIABILITY, NEGLIGENCE, OR IMPLIED WARRANTY IN LAW AND PURCHASER HEREBY WAIVES SUCH RIGHTS AND CLAIMS.

SELLER EXCLUDES LIABILITY, WHETHER AS A RESULT OF A BREACH OF CONTRACT OR WARRANTY, NEGLIGENCE OR

10

STRICT PRODUCT LIABILITY, FOR INCIDENTAL OR
CONSEQUENTIAL DAMAGES, INCLUDING, BUT NOT LIMITED
TO, DAMAGE TO THE AIRCRAFT OR OTHER PROPERTY,
COSTS AND EXPENSES RESULTING FROM REQUIRED CHANGES
OR MODIFICATIONS TO AIRCRAFT COMPONENTS AND
ASSEMBLIES, CHANGES IN RETIREMENT LIVES AND
OVERHAUL PERIODS, LOCAL CUSTOMS FEES AND TAXES,
AND COSTS OR EXPENSES FOR COMMERCIAL LOSSES OR
LOST PROFITS DUE TO LOSS OF USE OR GROUNDING OF
AIRCRAFT OR OTHERWISE.

SELLER MAKES NO WARRANTY AND DISCLAIMS ALL
LIABILITY IN CONTRACT OR IN TORT (DELICT),
INCLUDING, WITHOUT LIMITATION, NEGLIGENCE AND
STRICT TORT (DELICTUAL) LIABILITY WITH
RESPECT TO WORK PERFORMED BY THIRD PARTIES AT
PURCHASER'S REQUEST, INCLUDING INSPECTIONS,
AND WITH RESPECT TO ALL ENGINES, ENGINE
ACCESSORIES, BATTERIES, RADIOS, AVIONICS, AND
PURCHASER-FURNISHED EQUIPMENT OR EQUIPMENT
MANUFACTURED BY OTHERS AND INSTALLED AT
PURCHASER'S REQUEST.

The equipment is described in the detail
specification list described in Appendix 2 as is
Purchaser's additional specified configuration,
including installed accessories and customization,
if any.

. . . .

## ARTICLE 17
### LIMITATION OF LIABILITY

IN NO EVENT SHALL EITHER PARTY BE LIABLE UNDER THIS
AGREEMENT PURSUANT TO ANY CONTRACT NEGLIGENCE, STRICT
LIABILITY, TORT, OR OTHER LEGAL OR EQUITABLE THEORY FOR
ANY INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES OF
ANY NATURE WHATSOEVER, ARISING OUT OF OR IN CONNECTION
WITH THIS AGREEMENT, EVEN IF SUCH PARTY HAS BEEN
ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.  THE

> PARTIES ACKNOWLEDGE AND AGREE THAT THE LIMITATIONS OF
> LIABILITY SET FORTH IN THIS AGREEMENT REFLECT AN
> ALLOCATION OF RISK SET FORTH IN THIS AGREEMENT AND
> THAT, IN THE ABSENCE OF SUCH LIMITATIONS, THE TERMS OF
> THIS AGREEMENT WOULD BE SUBSTANTIALLY DIFFERENT.

Defs.' App. at 2 and 6. The above provisions are hereinafter referred to as the "Waiver Provisions."

As an initial matter, the court notes that, in the interpretation of contracts, the primary concern is to ascertain and to give effect to the intentions of the parties as expressed in the instrument. To achieve this object, the court is to examine and consider the entire instrument so that none of the provisions will be rendered meaningless. See, e.g., R & P Enterprises v. LaGuarta, Gavrel & Kirk, 596 S.W.2d 517, 518-19 (Tex. 1980). Construing the Purchase Agreement as a whole, the court is not convinced that the parties intended that the Waiver Provisions bar a claim for breach of contract.

Read as whole, the Purchase Agreement has provisions that are inconsistent with a reading that the parties intended that a breach of contract claim be waived. For example, after inspection, the Purchase Agreement gives Mansfield the right to identify deficiencies in the Sikorskys, which deficiencies are to be cured by defendants. Defs.' App. at 4.

A fair reading of the language in Article 2 is that it limits liability only as to issues related to configuration of the Sikorskys.  In construing the Waiver Provisions, the court does so from the standpoint of how "the 'reasonable man' would have used and understood such language, considering the circumstances surrounding its negotiation and keeping in mind the purposes intended to be accomplished by the parties when entered into the contract."  Manzo v. Ford, 731 S.W.2d 673, 676 (Tex. App.--Houston [14th Dist.] 1987, no writ).  "This rule is particularly applicable where the agreement purports to exempt the drafter from liability."  Id.  "[T]o be effective, exculpatory language must be clearly and unequivocally expressed."  Id.

Article 17 is unambiguously a limitation on what types of damages Mansfield may recover in the event of breach, i.e. no incidental, special, or consequential damages.  See Defs.' App. at 6.  That provision does not speak to a waiver of certain types of claims.

The language used by Bell in drafting the Purchase Agreement is phrased in such a way that a reasonable person, reading the entire agreement, would not understand it to express the meaning urged by defendants.  Id. at 677.  The court construes the

13

Purchase Agreement in such a way that it does not impair Mansfield's right to assert claims for breach of its agreement with Bell (which consists of the Purchase Agreement as supplemented by the Acceptance).

Assuming the Waiver Provisions do purport to bar a claim for breach of the Purchase Agreement, the court agrees with Mansfield that they should not be enforced to achieve that result.[3] As Mansfield correctly points out, a waiver term in a contract that eliminates a party's ability to pursue any remedy for breach should not be enforced, and the party should have access to a remedy. For example, under Section 2.719(b) of the Texas Business and Commerce Code, which is applicable to the sale of goods: "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title." As the commentary under section 2.719 explains:

> Under this section parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect. However, it is of the very

[3]Defendants complain that Mansfield cannot now urge the unenforceability of the Waiver Provisions, because it failed to plead that as an affirmative defense. The court disagrees. Assuming without deciding that Mansfield's attacks on the Waiver Provisions had to be pled as an affirmative defense, this court may excuse its failure to do so in the absence of prejudice. See, e.g., Giles v. General Elec. Co., 245 F.3d 474, 494 (5th Cir. 2001). The court finds no prejudice here. Defendants cannot legitimately claim surprise when the very fact of this lawsuit is a challenge to defendants' draconian reading of the Purchase Agreement and the Waiver Provisions.

essence of a sales contract that at least minimum
adequate remedies be available. If the parties intend
to conclude a contract for sale within this Article
they must accept the legal consequence that there be at
least a fair quantum of remedy for breach of the
obligations or duties outlined in the contract. Thus
any clause purporting to modify or limit the remedial
provisions of this Article in an unconscionable manner
is subject to deletion and in that event the remedies
made available by this Article are applicable as if the
stricken clause had never existed.

Tex. Bus. & Com. Code § 2.719(b) cmt. 1 (Vernon 1994).

   2.   The Acceptance Was Part of the Contract

   The court concurs with Mansfield that the Acceptance was

part of the contract between Mansfield and Bell.   Indeed, the

Acceptance was an integral part of the contract.   The Purchase

Agreement speaks for itself:

   The Equipment shall be accepted by Purchaser in the
   month of December, 2005 ("Acceptance Month") at
   Seller's designated facility or as otherwise agreed by
   the parties.  At least fifteen (15) calendar days prior
   to the date when the Equipment is ready for inspection,
   Seller shall give Purchaser written notice of the date
   when the Equipment will be available for inspection
   (hereinafter "Inspection Date").  No later than ten
   (10) calendar days following the Inspection Date, an
   authorized and qualified representative of Purchaser
   shall (i) inspect and flight test the Equipment at
   Seller's facility and, if the Equipment is in
   compliance with the terms of this Agreement, execute
   Seller's Certificate of Acceptance for the Equipment or
   (ii) execute and transmit by fax a Certificate of
   Acceptance with Waiver of Inspection for the Equipment.
   In the event the Equipment is not in compliance with
   this Agreement, Purchaser shall specify to Seller in
   writing any deficiencies with the Equipment.  Following

cure of such deficiencies, the parties shall continue the acceptance procedures.

Execution of the Certificate of Acceptance or Certificate of Acceptance with Waiver of Inspection, as appropriate, shall constitute acceptance ("Acceptance") of the Equipment by Purchaser.  If Purchaser fails to complete either (i) or (ii) above within the ten (10) calendar day period specified above for reasons not attributable to Seller, Seller shall have the option to (a) terminate this Agreement and retain all payments previously made by Purchaser as liquidated damages but not as a penalty, or (b) execute the Certificate of Acceptance on behalf of Purchaser which shall constitute Acceptance of the Equipment by Purchaser at which time the balance of the total purchase price shall become due and payable.  If the Equipment is Accepted by Seller or behalf of Purchaser as contemplated above, Seller shall be entitled to ship the Equipment to Purchaser in the manner specified below.  Acceptance of the Equipment shall constitute Purchaser's agreement that the Equipment conforms to the specified configuration, and the requirements of this Agreement.  The date the Certificate of Acceptance or Certificate of Acceptance with Waiver of Inspection is executed by Purchaser, or by Seller on behalf of Purchaser as provided herein, shall be deemed to be the "Acceptance Date.

See Defs.' App. at 3-4.

For defendants to now contend that the form Acceptance it

itself provided to Mansfield to sign and which Mansfield,

pursuant to the terms of the Purchase Agreement, did sign, is not

part of their contract but rather an impermissible attempt to

modify the Purchase Agreement is disingenuous at best and

warrants no detailed discussion.  The Acceptance is part of the

contract between Mansfield and Bell. Consequently, the "as is/where is" provision did become, as Mansfield contends, "as is/where was" at the time Mansfield executed the Acceptance. Further, Mansfield has created a genuine issue of material fact as to whether the Purchase Agreement, as supplemented by the Acceptance, was breached by, _inter alia_, defendants' (1) permitting Chevron to use the Sikorskys after Mansfield had accepted them in December 2005, and (2) inability to deliver the Sikorskys in their agreed-upon condition.

     3.    <u>Alleged Failure of Mansfield to Pay
           the Remainder of the Purchase Price</u>.

    Defendants' contention that Mansfield cannot sue for breach of contract, because it failed to meet the condition precedent of paying the balance of the purchase price at the time of acceptance is equally without merit. Obviously Mansfield would not be obligated to pay the balance of the purchase price unless it could receive assurance that it could take delivery of the Sikorskys upon doing so. There is nothing in the summary judgment record to indicate that Mansfield would not be ready, willing, and able to pay the balance once it was told that the Sikorskys were available for delivery in the condition contemplated by the Acceptance. Moreover, defendants engaged in

repeated actions after the Acceptance indicating their intention to continue performance under the Purchase Agreement although the balance had not been paid.  Indeed, nearly four months after Mansfield accepted the Sikorskys, AAC was trying to procure Mansfield's agreement to accept delivery of them at the full purchase price.

4.  <u>Damages</u>.

Finally, defendants contend that Mansfield has no evidence of damages as a result of a breach of contract claim.  The court disagrees.  In opposition to defendants' motion for summary judgment, Mansfield has submitted the affidavit of Jack Hareland in which he details how Mansfield has suffered significant financial loss from defendants' breach of contract.  This evidence serves to create a genuine issue of material fact as to Mansfield's damages.

B.  <u>Fraudulent Inducement</u>.

As stated by the Texas Supreme Court, "Texas law has long imposed a duty to abstain from inducing another to enter into a contract through the use of fraudulent mis-representations."  <u>See</u> <u>Formosa Plastics v. Presidio Engineers and Contractors Inc.</u>, 960 S.W.2d 41, 46 (Tex. 1998).  "[T]ort damages are recoverable for a fraudulent inducement claim irrespective of whether the

fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract." Id. at 47.

Mansfield's fraudulent inducement claim is asserted solely against Bell. Specifically, Mansfield urges that Bell fraudulently induced it to enter into the Purchase Agreement by, inter alia, falsely representing that the Sikorskys would be available for delivery by December 2005, that one of them was parked, and that the other was only being used sparingly. In addition, Mansfield alleges that Bell made additional fraudulent misrepresentations after the execution of the Purchase Agreement but prior to Mansfield's acceptance of the Sikorskys in December of 2005. These misrepresentations include that Bell was ready to sell the Sikorskys and make them available for delivery in the same condition as the last maintenance report.

Bell urges three grounds for summary judgment on Mansfield's claim of fraudulent inducement: (1) Mansfield waived this claim by suing on, and thereby ratifying, the Purchase Agreement; (2) Mansfield has failed to produce any evidence in support of any of the elements of this claim; and (3) various provisions of the Purchase Agreement preclude Mansfield from asserting this claim as a matter of applicable Texas law.

Defendants fail to cite authority that persuades the court of the merit of their waiver contention. Rule 8(e)(2) permits a party to state as many separate claims as the party has regardless of consistency. The Fifth Circuit has held that a right of action on a contract and for fraud in inducing plaintiff to enter into such contract may exist, and be pursued, at the same time. Fredonia Broadcasting Corp., Inc. v. RCA Corp., 481 F.2d 781, 790-91 (5th Cir. 1973). Plaintiff may be required to elect a remedy at some point, but election of that kind is not an issue at this stage of the proceedings.

There is summary judgment evidence in support of the elements of a fraudulent inducement claim. A fraud cause of action requires, "a material representation, which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury." Formosa Plastics, 960 S.W.2d at 47 (citations and internal quotations omitted). There is evidence that a material representation was made in the form of an assurance that the Sikorskys would be available for delivery to Mansfield in December 2005. While the record might lack evidence that Bell knew when it made that representation that it could not cause the Sikorskys to be delivered in December, there

is summary judgment evidence from which the inference can be drawn that when Bell represented that delivery would be made in December it was without knowledge of the truth of that representation, i.e., it was without knowledge that, in fact, it could cause the Sikorskys to be delivered to plaintiff in December. Moreover, there is summary judgment evidence that Bell intended Mansfield to act upon Bell's representation that delivery would occur in December, that Mansfield relied upon that representation, and that Mansfield suffered injury by reason of that reliance.

While initially concerned that the third ground might have merit by reason of the holding of the Texas Supreme Court in Schlumberger Technology Corp. v. Swanson, 959 S.W.2d 171 (Tex. 1997), the court has now concluded that Schlumberger does not control and that, instead, the controlling case rule is the one adopted by the Texas Supreme Court in Dallas Farm Machinery Co. v. Reaves, 307 S.W.2d 233 (1957), that a claim for fraudulent inducement can be brought even though the contract the plaintiff was induced to make contains a merger clause. The exception expressed by the Texas Supreme court in Schlumberger exists only if the contract document "clearly expresses the parties' intent to waive fraudulent inducement claims" or "disclaims reliance on

representations about specific matters in dispute."
Schlumberger, 959 S.W.2d at 181. There is no language in the
Purchase Agreement that qualifies it for the Schlumberger
exception to the Dallas Farm Machinery rule. The language in
Articles 2 and 17, supra at 10-12, do not begin to satisfy the
Schlumberger standard for an exception. While the language in
Article 19, which is the merger clause, contains the word
"representations," see Defs.' App. at 6, it does not have the
specificity essential to the Schlumberger exception--it does not
clearly express an intent to waive fraudulent inducement claims
and does not expressly disclaim reliance on representations about
specific matters in dispute.

Therefore, the motion is denied as to the fraudulent
inducement claim.

C.   Conversion

Both Mansfield and defendants agree as to the requisite
elements of conversion. Those are: "(1) that plaintiff owned,
had legal possession of the property, or was entitled to legal
possession of the property; (2) the defendant assumed and
exercised dominion and control over the property in an unlawful
and unauthorized manner, to the exclusion of and inconsistent
with the plaintiff's rights; and (3) the defendant refused the

plaintiff's demand for the return of the property." See Huffmeyer v. Mann, 49 S.W.3d 554, 558 (Tex. App.--Corpus Christie 2001, no pet.). Mansfield has failed to offer any legal authority that defendants' dominion and control over the Sikorskys in the context of what at bottom is a breach of contract dispute rises to the level of unlawful and unauthorized conduct.[4] Because the second requisite element for a conversion claim is not met as a matter of law, the court need not address the remaining elements.

VI.

Order

For the reasons discussed above, the court concludes that defendants' motion for summary judgment should be granted in part

---

[4]Notably, Mansfield's conversion claim would also appear to be barred as a matter of law by the so-called "independent injury rule." See, e.g., Exxon Mobil Corp. v. Kinder Morgan Operating L.P., 192 S.W.3d 120, 126-27 (Tex. App.--Houston [14th Dist.] 2006, no pet.) (trial court properly directed verdict against Exxon on its conversion claim based on independent injury rule). Under this rule, "if the defendant's conduct would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may sound in both tort and contract, but if the defendant's conduct would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim sounds only in contract." Id. (citing Southwestern Bell. Tel. Co. v. DeLanney, 809 S.W.2d 493, 494 (Tex. 1991)). When the only damage is to the subject matter of the contract, the plaintiff's action sounds only in contract. Id. (citing DeLanney, 809 S.W.2d at 494-95).

and denied in part.   Therefore,

The court ORDERS that defendants' motion for summary judgment on Mansfield's claims for breach of contract and fraudulent inducement be, and is hereby denied.

The court further ORDERS that Mansfield's claims for conversion and violation of the Texas Deceptive Trade Practices Act be, and are hereby, dismissed.

SIGNED September 6, 2007.

JOHN McBRYDE
United States District Judge